JANVIER, Judge.
Plaintiff corporation seeks to recover the balance alleged to be due on a written contract under which it agreed to erect two electrical display signs for the defendant and to collect also for two service charges, one in the sum of $13.91 and the other in the sum of $28.33. It claims a balance of $1,082.34, together with six per cent on that part of the indebtedness which represents the unpaid purchase price of the display signs, together with twenty per cent on said balance and interest, the said twenty per cent representing attorneys fees as stipulated in the contract and for five per cent interest on the balance of the claim. Plaintiff alleges that it erected the signs in accordance with the said written contract and that defendant has paid $94.55 on account.
Defendant answered, admitting the execution of the contract and that the signs had been erected and that it had paid on account of the purchase price the sum of $94.55 as alleged, but it averred that one of the signs had not been properly erected or constructed; had never operated as it should have; had never been properly repaired and was defective for the following reason:
“Water runs over between the lettering and background and makes a short, putting out part of the sign lights, different parts at different times.”
As an alternative defense, defendant averred that to properly repair the defective sign would cost $500, and it prayed that should it be held liable for the purchase price of the sign, it should be credited with $500 as the expense to which it would be put in making the sign operate properly.
After a trial there was judgment in favor of plaintiff as prayed for, and defend/ant has appealed suspensively.
The contract required that the sign in question be “installed by April 4th, 1951.” It contained a stipulation reading as follows :
*21 “This contract does not include any guarantee or maintenance of any kind.”
Immediately following this typewritten statement appears the following:
“No. 5 is still in power & we hold the guarantee for No. 5.”
The “No. 5” referred to was a provision in the contract reading as follows:
“Industrial Electric is to install the neon panel wall sign so that the water will not cause damage to the windows below it, or the water from the rains will not cause damage between the wall and the porcelain panel as a result of the installation of this sign.”
The sign was installed on or before April 4, 1951. The record convinces us that it operated from that time until about August 20, 1951, at which time plaintiff was called upon to make minor repairs which cost $13.91; that these repairs were made and that again the sign operated properly.
Defendant maintains that the sign did not operate properly except for a very short time after it had been installed and that complaint had been constantly made without effect. Mr. Schon, the President of defendant corporation, says that he speaks very poorly and that for that reason
“ * * * I can’t call because people don’t understand when I call and nobody can tell, nobody can make something out, * * *.”
He says, however, that he did have the plaintiff corporation called by “somebody”. It seems to have been this call which was made in August and which resulted in the repairs costing $13.91.
There is much evidence to the effect that the sign has been seen in operation on many occasions. There is proof that on several occasions letters were written by plaintiff to defendant demanding payment of the balance due and that these were not answered.
It is admitted that plaintiff paid $94.50 on account of the purchase price. Mr. Brignac, the vice-president of plaintiff corporation, says that he spoke to Mr. Schon on many occasions; that the latter understands the English language and speaks it well. He said:
“ * * * I would be very happy to read the English language as well as Mr. Schon, who states he doesn’t understand the English language.”
Mr. Brignac also says that once or twice in the Roosevelt Hotel he met Mr. Schon who “made no mention of any complaints other than to tell me he was going to pay.”
While there is some suggestion that the trouble with the sign was a defect which permitted water to cause a short circuit and that this was the trouble which had been anticipated and which had been guaranteed against by the insertion in the contract of the statement in ink concerning stipulation “No. 5,” the record does not contain any proof which convinces us that the trouble, if there was any, resulted from the violation of that particular stipulation.
At the termination of the trial, the District Judge said from the Bench:
“ * * * This case involves the credibility of the witnesses, and the court believes the witnesses for the plaintiff, and especially the witness Mr. Brignac who testified that the sign was working at the time the defendant promised to pay. There will be judgment accordingly.”
We concur in the conclusion reached by the District Judge.
The contract provided for payments of $30.60 each month for thirty-three months and the note given provided for interest at the rate of six per cent on the deferred payments and that in the event of default in any payment, the unpaid balance should become due in its entirety. The contract also provided for attorney’s fees of twenty per cent on the total amount due or sued for, “should it become necessary to retain *22 services of an attorney to effect collection of any amount owed hereunder * *
The alternative defense, that in any event plaintiff’s claim should be reduced by the sum of $500, cannot be considered, first, for the reason that the record does not show that the sign was defective, and second, for the reason that there is not one word of proof as to the cost of making any repairs which might be necessary even if the sign had been proved to be defective.
Our conclusion, as was the conclusion of the District Court, is that plaintiff was entitled to judgment as prayed for.
Accordingly the judgment appealed from is affirmed at the cost of appellant.
Affirmed.